PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JA'NAE LARIA JOHNSON, | ) | |
| | ) | CASE NO.  4:25-cv-604 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| LIBERTY TOWNSHIP *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | [Resolving ECF No. 22] |

This case comes before the Court on Plaintiff Ja'Nae Laria Johnson's Complaint (ECF No. 1) alleging civil rights claims under Ohio law and 42 U.S.C. § 1983 for Fourth Amendment Violations against Defendants Officer Nick Ryan, Sergeant Chad McGarry, and Liberty Township.  Now pending before the Court is Defendants' Motion for Summary Judgment.  ECF No. 22.  The motion is fully briefed.  Plf. Opp. Br., ECF No. 24; Defs. Reply, ECF No. 29.  The Court has been advised, having reviewed the parties' briefs, the record, and applicable law.  For the reasons explained below, the Motion for Summary Judgment is granted in part and denied in part.  Summary judgment is granted on Count 4 as to all Defendants and Count 5 as to Liberty Township.  Summary judgment for Count 3 is granted as to Sgt. Chad McGarry and denied as to Officer Nick Ryan.  Plaintiff abandoned her state-law claims made in Count 1 and Count 2.  ECF No. 24 at PageID #: 186.  Therefore, Counts 1 and 2 are dismissed.

(4:25CV604)

## I.  FACTUAL BACKGROUND[1]

On March 25, 2023, Plaintiff Ja'Nae Laria Johnson purchased a 2016 Volkswagen CC from Auto Boutique in Columbus Ohio.[2]  Buyer's Order, ECF No. 24-7 at PageID #: 674.  The dealership issued an Ohio temporary tag Q501080 under dealer permit US020671, expiring on May 9, 2023.  Defs. Proposed Stip., ECF No. 21 at PageID #: 137, ▶ 4; Temp. Tag Reg. App., ECF No. 24-7 at PageID #: 705.  Plaintiff then drove the vehicle home and parked it in the Woods of Liberty apartment complex parking lot in Liberty Township, Ohio.

Unbeknownst to Plaintiff, her new vehicle had been lawfully repossessed from its prior owner, Corey Johnson,[3] in the Chicago, Illinois area.  The vehicle was auctioned off and purchased by Auto Boutique on February 28, 2023.  Ryan dep. Tr., ECF No. 24-3 at PageID ##: 405–11.  At some unknown date, Corey Johnson falsely (or erroneously) reported the vehicle stolen to the Chicago Police Department.

Around 1:00 a.m. in the morning on March 27, 2023, Defendant Officer Nick Ryan was patrolling Plaintiff's apartment complex parking lot, conducting "spot checks" when he discovered Plaintiff's vehicle with the Ohio temporary tag.[4]  He ran the temporary tag and the

---

[1] Consistent with the Case Management Plan (ECF No. 7), the parties notified the Court that there are no stipulations of fact.  ECF No. 21.  Defendants included their proposed stipulations of fact, which contained several errors, including erroneous dates and factual assertions directly contradicted by the video recordings and evidence in this case.

[2] Plaintiff's brief references a 2014 Volkswagen.  This appears to be a scrivener's error as the record confirms that the vehicle was a 2016 Volkswagen CC.

[3] The spelling of Corey Johnson's first name is inconsistent ("Cory" vs. "Corey") throughout the record.  For clarity, the Court will use "Corey Johnson" hereinafter.  Additionally, there is no known or alleged relationship between Plaintiff Johnson and Corey Johnson.

[4] Officer Ryan testified that he "focus[es] on hotels, motels, apartment complexes, residential streets" as a crime deterrent and indicated that Plaintiff's apartment complex was "one of many that [he] drove through on a routine basis on night turn."  Ryan dep.

2

(4:25CV604)

vehicle identification number ("VIN") (WVWBP7AN8GE503795) through the state-maintained Law Enforcement Agencies Data System ("LEADS").[5]  Ryan dep. Tr., ECF No. 24-3 at PageID #: 291 [22:2–6].  The LEADS report allegedly included the following information: (1) the VIN was associated with a stolen vehicle flag out of the Chicago Police Department; (2) the Ohio temporary tags were issued and registered to Ja'Nae Johnson; (3) the VIN was not registered to either Plaintiff or the prior owner, Corey Johnson.  Ryan BWC, ECF No. 18, Ex. D [00:11:42–00:12:12].  Officer Ryan subsequently identified Corey Johnson through previous registration records associated with the VIN.  Ryan BWC, ECF No. 18, Ex. D [00:12:13–54].  Sorice Towing was contacted to begin the impounding process.  Police Report, ECF No. 24-2 at PageID #: 267.

Shortly after Officer Ryan discovered the stolen vehicle flag, Liberty Township Police Officer Brian Delia and Defendant Sergeant Chad McGarry arrived on scene to assist.  Officer Ryan informed Sgt. McGarry that the LEADS report flagged the vehicle as stolen but also reported conflicting owner information.  Ryan BWC, ECF No. 18, Ex. D [00:20:39–59].  Sgt. McGarry commented that the situation was "weird" and noted that Plaintiff "shouldn't be able to get tags" for a stolen vehicle because the VIN would show the stolen vehicle flag.  Ryan BWC, ECF No. 18, Ex. D [00:20:59; 00:21:40–50].  During their discussion, Sgt. McGarry initially concluded that Plaintiff, not Corey Johnson, was the registered owner because the vehicle was registered by the temporary tag, which was registered to Plaintiff.  McGarry BWC, ECF No. 18,

---

Tr., ECF No. 24-3 at PageID #: 332 [63:7–19].  He offered no other explanation for why he was running plates at that apartment complex, or Plaintiff's tags in particular, other than that they were temporary tags.  Ryan BWC, ECF No. 18, Ex. D [00:20:41–43]

[5] The Ohio LEADS system is connected with the National Crime Information Center ("NCIC") and enables authorized law enforcement agencies to access criminal justice information across the country.  *See* Ohio State Highway Patrol: Ohio Law Enforcement Automated Data System Portal.

3

(4:25CV604)

Ex. C [00:01:18–47].  Officer Ryan retorted "not really" and asserted that the VIN was associated with Corey Johnson, Ryan BWC, ECF No. 18, Ex. D [00:23:25–30], despite just moments earlier, telling Officer Delia that the VIN was not associated with either Plaintiff or Corey Johnson.  Ryan BWC, ECF No. 18, Ex. D [00:12:39–46].

While waiting for the tow truck, Officer Delia asked Officer Ryan whether he wanted to do a "knock and talk" on Plaintiff's apartment unit.  Ryan BWC, Ex. D, ECF No. 18, [00:21:27–40]; Ryan BWC, Ex. D, ECF No. 18, [00:41:53–42:24].  Officer Ryan stated that he hoped the commotion would draw Plaintiff out.  As the tow truck began impounding the car, Plaintiff did, in fact, come out of her apartment while on the phone with her mother.  Approaching the officers, she stated, "I was just seeing why you were towing this car."  Ryan BWC, ECF No. 18, Ex. D [00:42:30–32].  Officer Ryan immediately placed her in handcuffs and told her she was being detained, not arrested, and that he would explain the situation.  Ryan BWC, ECF No. 18, Ex. D [00:42:27–40].  Upon detaining Plaintiff, Officer Ryan discovered that she had a car key, which was confiscated.  Ryan BWC, ECF No. 18, Ex. D [00:42:42–51].  Officer Ryan gave Plaintiff *Miranda* warnings and asked if she would like to speak with him.  She declined and he placed her in a police cruiser.  Ryan BWC, ECF No. 18, Ex. D [00:43:18–00:44:36].

Officer Ryan told Sgt. McGarry that Plaintiff did not want to talk after receiving her *Miranda* warnings, to which Sgt. McGarry replied: "tell her she's under arrest for receiving stolen property then."  McGarry BWC, ECF No. 18, Ex. C [00:23:40–50].  Sgt. McGarry then asked if she claimed ownership of the car, to which Officer Ryan stated "yes."  McGarry BWC, ECF No. 18, Ex. C [00:23:51–52].  Once again, Officer Ryan provided Sgt. McGarry with inaccurate information as Plaintiff did not claim ownership of the vehicle, rather, she asked why

4

(4:25CV604)

they were towing "this car." Notably, Officer Ryan correctly recorded her statement in the police report. Police Report, ECF No. 24-2 at PageID #: 267.

That said, the officers were able to unlock the vehicle using the key Plaintiff had in her possession. Inside they discovered Plaintiff's personal items, including a license plate, JTT8174, that was previously registered to Plaintiff and associated with a 2012 Chevy Cruze. Police Report, ECF No. 24-2 at PageID #: 268. The officers noticed a strong odor of marijuana, though no drugs or weapons were found in the vehicle. Ryan BWC, ECF No. 18, Ex. D [00:47:19–00:54-14]; Delia BWC, ECF No. 18, Ex. B [00:05:18–00:12:10]. Officer Ryan and Sgt. McGarry determined that they had probable cause to arrest Plaintiff because the vehicle "popped" stolen on the LEADS report, Plaintiff had the keys to the vehicle when she approached them, and her belongings, including an old license plate previously registered to her, were inside the car.

When Officer Ryan informed Plaintiff that the vehicle was reported stolen out of Chicago and that she was being arrested for receiving stolen property, Plaintiff immediately offered to show him the purchase paperwork. Ryan BWC, ECF No. 18, Ex. D [00:54:58–00:55:05]. Officer Ryan refused to look at the paperwork stating that "It's not going to change anything right now, dear." Ryan BWC, ECF No. 18, Ex. D [00:55:10–13]. Plaintiff was taken to the Trumbull County Jail. The charges against her were subsequently dropped on April 6, 2023, for lack of probable cause. ECF No. 1 at PageID #: 5, ▯ 33; Defs. Proposed Stip., ECF No. 21 at PageID #: 139, ▯ 26.

Plaintiff brought this case, alleging five causes of action: (1) false arrest and unlawful detention under Ohio law against Officer Ryan and Sgt. McGarry; (2) malicious prosecution under Ohio law against Officer Ryan and Sgt. McGarry; (3) false arrest and unlawful detention

5

(4:25CV604)

in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officer Ryan and Sgt. McGarry; (4) malicious prosecution in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officer Ryan and Sgt. McGarry; and (5) *Monell* liability against Liberty Township. ECF No. 1.

In her response to Defendants' Motion for Summary Judgment, Plaintiff announced the abandonment of her state-law claims in Count 1 and Count 2 and agreed that they need not be resolved by the Court.  ECF No. 24 at PageID ##: 168, 186.  Accordingly, Counts 1 and 2 are dismissed.

## II.      STANDARD OF REVIEW

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  The fact under dispute must be "material," and the dispute must be "genuine."  A fact is "material" if its resolution will affect the outcome of the lawsuit. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*.  ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The moving party is not required to file affidavits or similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies on the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists."

6

(4:25CV604)

*Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402, at \*2 (N.D. Ohio Apr. 16, 2018) (citing *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds). "'[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is undisputed." *Malee,* 2018 WL 1805402, at \*2 (quoting Fed. R. Civ. P. 56(e)(2)).

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

### III.    DISCUSSION

Defendants move for summary judgment, insisting that Officer Ryan and Sgt. McGarry are entitled to qualified immunity because the LEADS report sufficiently established probable

(4:25CV604)

cause supporting Plaintiff's arrest and, even if not, clearly established law excuses Defendants' "reasonabl[e] but mistaken[]" probable cause determination.  In addition, Defendants also insist that Plaintiff has failed to demonstrate a constitutional violation or, alternatively, a facially unconstitutional official policy to support a *Monell* claim.

Plaintiff challenges the motion, arguing that: (1) whether Defendants had sufficient probable cause for an arrest is a question of fact for the jury; (2) Defendants lacked sufficient probable cause of the *mens rea* element of the crime for which Plaintiff was arrested; and (3) that the "reasonably but mistakenly" doctrine is inapplicable here because Defendants consciously disregarded exculpatory information in their possession.  Plaintiff also argues that she identified policies and practices sufficient to support a *Monell* claim.

### A.  Qualified Immunity Standard

To succeed on a § 1983 claim, Plaintiff must demonstrate: (1) her rights secured by the Constitution or federal law were violated; (2) by a person (or persons) acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Government officials may invoke qualified immunity to shield themselves from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts employ a two-part test to determine whether qualified immunity applies: (1) whether, construing the facts in a light most favorable to the plaintiff, a constitutional violation occurred; and (2) whether the violated right was clearly established at the time of the violation.  *Baynes v. Cleland*, 799 F.3d 600, 609–10 (6th Cir. 2015) (citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010)).  If a plaintiff fails to satisfy one prong, the other need not be addressed.  *Mosier v. Evans*, 90 F.4th 541, 546

8

(4:25CV604)

(6th Cir. 2024) (citing *Price v. Montgomery Cty.*, 72 F.4th 711, 723 (6th Cir. 2023)).  The

qualified immunity analysis is individualized for each defendant, as a plaintiff "must show that

each defendant personally violated [her] rights."  *Harris v. City of Saginaw, Mich.*, 62 F.4th

1028, 1033 (6th Cir. 2023) (citing *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2024)).

The qualified immunity analysis is not intended to second guess discretionary decisions

made by police officers with the benefit of 20/20 hindsight.  *Radvansky v. City of Olmsted Falls*,

395 F.3d 291, 302 (6th Cir. 2005) (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).  The

Supreme Court recognizes that reasonable mistakes can occur and that the qualified immunity

analysis leaves room for such mistakes.  *Saucier v. Katz*, 533 U.S. 194, 205 (2001).  Therefore,

the inquiry is whether a reasonable officer at the scene would have taken the same action.

*Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335,

341 (1986)).  The qualified immunity doctrine protects "all but the plainly incompetent or those

who knowingly violate the law."  *Id*.; *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

### B.  Count 3: False Arrest and Unlawful Detention

The Court begins with Plaintiff's false arrest and unlawful detention claim (Count 3).

When a "false imprisonment" or unlawful detention claim arises out of an alleged false arrest

claim—as it does in this case—the two claims are identical and are resolved together.  *Weser v.

Goodson*, 965 F.3d 507, 513 (6th Cir. 2020).  Accordingly, the Court addresses Plaintiff's false

arrest and unlawful detention claims simultaneously.

To succeed on her false arrest and unlawful detention claims, Plaintiff must show that the

arresting officer lacked probable cause to arrest her.  *Alford v. Deffendoll*, 165 F.4th 490, 496

(6th Cir. 2026) (citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).  "Probable cause is

not a high bar" and "requires only a probability or substantial chance of criminal activity, not an

(4:25CV604)

actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)); *Sykes*, 625 F.3d at 306 (stating that probable cause is "supported by less than prima facie proof but more than mere suspicion."). "A showing of 'probable cause provides a complete defense to a claim of false arrest.'" *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014)).  The first question is whether, based on the totality of the circumstances and construing the facts in a light most favorable to Plaintiff, Defendants had sufficient probable cause at the time Plaintiff was arrested.  If not, the second question is whether clearly established law put Defendants on notice that they lacked probable cause to arrest her.

       1.  *Plaintiff's Arrest*

The parties disagree about when Plaintiff was arrested.  Plaintiff asserts that there is a question of fact regarding whether Officer Ryan's placing Plaintiff in handcuffs and detaining her in a police cruiser constituted an arrest, despite Defendants' characterization of the detention as an investigative stop.  ECF No. 24 at PageID #: 181.  Defendants reject this argument as a red herring, insisting that Defendants had probable cause to arrest Plaintiff "from the first instant [*sic*] of contact."  ECF No. 29 at PageID # 779.  Defendants' argument regarding probable cause is not well taken (as discussed below), therefore the Court must determine when Plaintiff was arrested and whether, at that time, Defendants had sufficient probable cause to place her under arrest.

When Officer Ryan handcuffed Plaintiff, he told her that she was just being detained, not arrested.  Police officers may briefly detain an individual for investigative purposes if they have reasonable suspicion, that is, a particularized and objective basis for suspecting that the individual is involved in criminal activity.  *Houston v. Clark Cty. Sheriff Deputies John Does 1-*

(4:25CV604)

5, 174 F.3d 809, 813 (6th Cir. 1999) (internal citations omitted).  "[R]easonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause[,]" *id*. (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)), and is considered under the totality of the circumstances, accounting for all information available at the time of the detention. *Humphrey*, 482 F.3d at 846.  Whether officers had sufficient reasonable suspicion to initiate an investigative stop is a mixed question of law and fact, considering: (1) the historical facts known to the officers at the scene; and (2) whether such facts satisfy the relevant statutory or constitutional standard.  *Ornelas v. United States*, 517 U.S. 690, 696–97 (1996) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).

The parties agree that the LEADS report showed the vehicle had been reported stolen and that Plaintiff had keys to the vehicle when she approached the officers.  These facts were sufficient to establish reasonable suspicion such that Defendants could lawfully detain Plaintiff for an investigative stop.  The remaining issue is whether the manner of that detention constituted an arrest.

There is no bright line rule distinguishing an investigative stop from an arrest. *Sutton v. Metro. Gov't of Nashville and Davidson Cty.*, 700 F.3d 865, 876 (6th Cir. 2012).  The length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion, *Hodges v. City of Grand Rapids*, 139 F.4th 495, 515 (6th Cir. 2025) (quoting *Houston*, 174 F.3d at 814), and employ the least intrusive means reasonably available to dispel an officer's suspicion. *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "When the nature of a seizure exceeds the bounds of a permissible investigative stop, the detention may become an arrest that must be supported by probable cause." *Dorsey v. Barber*, 517 F.3d 389, 398 (6th Cir. 2008).  Placing a suspect in

11

(4:25CV604)

handcuffs or detaining her in a police cruiser "do[es] not automatically transform a *Terry* stop into an arrest, [but] these displays of force must be warranted by the circumstances." *Brown v. Lewis*, 779 F.3d 401, 415 (6th Cir. 2015) (citing *Smoak v. Hall*, 460 F.3d 768, 781 (6th Cir. 2006)).  "Intrusive measures are warranted to secure a detainee only whe[n] specific facts lead to an inference that the detainee poses a risk of flight or of violence to the officers." *Id*.

Here, it is undisputed that Officer Ryan immediately handcuffed Plaintiff when she approached him and Officer Delia.  He explained that this action was "to ensure everybody's safety."  Ryan dep. Tr., ECF No. 24-3 at PageID #: 325 [56:22–24].  Presuming that was a legitimate explanation, Plaintiff's detention in handcuffs was only warranted for the time it took Officer Ryan to verify or dispel any suspicion that she posed a safety threat.  *See Brown*, 779 F.3d at 415 (finding "[i]f there is no specific reason for the officers to believe that the detainee poses a risk of flight or violence, 'a bare inference' or speculation that the detainee may somehow be violent is not sufficient to justify the use of handcuffs.").

Defendants point to no evidence that Plaintiff posed any threat of violence or that they believed she was armed.  Officer Delia testified that he did not see any weapons when she approached them, Delia dep. Tr., ECF No. 24-6 at PageID #: 629 [31:17], and Plaintiff explicitly told Officer Ryan that she was unarmed.  Ryan BWC, ECF No. 18, Ex. D [00:44:48–53].  Moreover, Plaintiff was cooperative throughout the encounter and did not demonstrate any behavior indicating that she posed a flight risk or threat of violence.  Officer Ryan conceded as much by testifying that Plaintiff did not give the initial impression that she would fight with officers, although he could not say that she would not or whether there were other individuals in

12

(4:25CV604)

her apartment who posed a security threat.[6]  Ryan dep. Tr., ECF No. 24-3 at PageID #: 326 [57:11–17].  Officer Ryan's concerns that the situation *could* have evolved into a dangerous one is insufficient to justify the manner of Plaintiff's detention.

Officer Ryan's placing Plaintiff in handcuffs and putting her in the police car was not warranted under the circumstances to conduct an investigative stop and, therefore, constituted an arrest requiring probable cause.

*2.  Probable Cause*

Even assuming Plaintiff's initial detention was not an arrest, the record does not demonstrate that Defendants had sufficient information to support probable cause to justify her arrest at any point during the encounter.  In the alternative, there is a genuine issue of material fact regarding the LEADS report's contents.

As noted above, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Wesby*, 583 U.S. at 57.  The Sixth Circuit holds that an arrest is supported by the requisite probable cause when, at the time of the arrest, "'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'"  *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations in original).  As with reasonable suspicion, probable cause is a mixed question of fact and law.  *Gerics v. Trevino*,

---

[6] Defendants provided no evidence, and the record contains no indication, that officers believed someone else was in Plaintiff's apartment or that such an individual posed a safety threat.  Indeed, that specious assertion is undermined by the officers' surprise that even Plaintiff was in her apartment due to a power outage at the complex. McGarry BWC, ECF No. 18, Ex. C [00:02:55–00:03:04]

13

(4:25CV604)

974 F.3d 798, 804 (6th Cir. 2020) (citing Randall H. Warner, *All Mixed Up About Mixed Questions*, 7 J. App. Prac. & Proc. 101, 109 (2005)).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."  *Ouza v. City of Dearborn Hgts., Mich.*, 969 F.3d 265, 279 (6th Cir. 2020) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)) (internal quotations omitted).  When the historical facts are undisputed, probable cause is a question of law for the court to resolve, not a question of fact for the jury.  *Gerics*, 974 F.3d at 805; *Ornelas*, 517 U.S. at 696–97.

Plaintiff's main argument is that Defendants did not have probable cause that she knew or reasonably should have known that the vehicle was stolen.  ECF No. 24 at PageID #: 176–77. She relies on the Supreme Court's opinion in *Wesby* to insist that Officer Ryan and Sgt. McGarry were required to consider the *mens rea* element when making their probable cause determination. ECF No. 24 at PageID #: 177.  Plaintiff overreads *Wesby*.  In that case, partygoers were arrested for trespassing in a vacant house, despite claiming they believed they had permission to be on the property.  *Wesby*, 583 U.S. at 57.  The Court rejected the partygoers' *mens rea* argument, holding that the facts known to the arresting officers at the time of the arrests, including the partygoers' attempts to hide from law enforcement and their vague and inconsistent statements regarding their right to be on the premises, were "*strong* indicia" that the partygoers knew they were trespassing.  *Id.* at 59 (original emphasis).  That case does not, however, suggest that officers *must* establish probable cause for every element of the crime before arresting a suspect.  Indeed, the Sixth Circuit holds that "while intent is an element of the crime [of receiving stolen property] which must be proved at trial, it is not necessary in order to establish probable cause to arrest." *United States v. Baker*, 976 F.3d 636, 648–49 (6th Cir. 2020) (quoting *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983)) (internal quotations and brackets omitted); *see Young v.*

14

(4:25CV604)

*Owens*, 577 F. App'x 410, 415 (6th Cir. 2014) (quoting *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 452–53 (6th Cir. 2011)) (recognizing that if a jury can make an inference of guilty knowledge based on the unexplained possession of stolen goods, "then surely [officers can], on the basis of a similar inference, reasonably believe that [a person] had committed a crime in order to establish probable cause for his arrest.").

In contrast, Defendants claim that they had probable cause to arrest Plaintiff because: (1) there was a confirmed LEADS hit flagging the car as stolen; and (2) Plaintiff was in possession of that car.  Full stop.  ECF No. 22 at PageID #: 149.  They rely on *United States v. Davis*, 568 F.2d 514 (6th Cir. 1978) and its application in *United States v. Conley*, No. 21-1723, 2023 WL 165966 (6th Cir. Jan. 12, 2023), and *Cook v. Boss*, No. 24-3350, 2025 WL 304607 (6th Cir. Jan. 27, 2025) to support the contention that a LEADS/NCIC identification alone is sufficient for probable cause.  ECF No. 22 at PageID ##: 149–50; ECF No. 29 at PageID #: 775.

In *Davis*, the Sixth Circuit held that an NCIC identification of two stolen vehicles was sufficient to establish probable cause for the arrest of the defendants in possession of those vehicles and that such report was admissible at trial to corroborate the true owner's testimony concerning the alleged theft.  *See* 568 F.2d at 516 (internal citations omitted).  Similarly, the Sixth Circuit held that information contained in a Michigan Law Enforcement Information Network ("LEIN") report indicating that a driver lacks a valid license or insurance "can establish probable cause to execute a traffic stop."  *Conley*, 2023 WL 165966, at *1, 4.  In *Conley*, the court explained that the police officer had probable cause to initiate the traffic stop because he reasonably relied on information found within the LEIN report, even if such information was ultimately wrong.  *Id*. at *4.

15

(4:25CV604)

Finally, in *Cook*, police officers detained the plaintiff at gunpoint and then handcuffed him outside his home after they ran his license plate and discovered an active stolen vehicle designation, unaware that he was the lawful owner and had recovered the vehicle without adequately notifying police.  2025 WL 304607, at *1.  When the plaintiff offered to produce paperwork proving he was the rightful owner, officers walked up to his house and verified the ownership paperwork with his wife.  *Id*.  The Sixth Circuit found no Fourth Amendment violation because "[a]t the time of the stop, the officers had only two pieces of information—a certain Dodge Ram 3500 was identified stolen, and that same Dodge Ram 3500 sat right in front of them."  *Id*. at *6.  The court explained that the LEADS report and the plaintiff's possession of the vehicle established a reasonable suspicion that the plaintiff was involved in a felony auto theft, justifying the initiation and manner of the traffic stop.  *Id*. at *5.  The court continued that even if the plaintiff's detention amounted to an arrest, the officers had sufficient probable cause "[u]ntil they verified [his] story."  *Id*. at *6.

Defendants insist that these cases, *Cook* in particular, are dispositive in their favor.  *See* ECF No. 29 at PageID #: 768.  Certainly, Defendants' cited case law supports the position that a LEADS/NCIC report *can* establish probable cause for an arrest, but they go too far when concluding that such reports *always* establish probable cause.  This is so because police officers must consider the totality of the circumstances, and "cannot look only at the evidence of guilt while ignoring all exculpatory evidence when assessing probable cause."  *Ouza*, 969 F.3d at 279 (citing *Gardenhire*, 205 F.3d at 318); *see Harris*, 62 F.4th at 1034–35 (concluding officers lacked probable cause to arrest the plaintiff because they "failed to review any of the readily available allegedly exculpatory evidence" at the scene.).  Unlike in *Cook*, where "officers had only two pieces of information," *see* 2025 WL 304607, at *6, the LEADS report at issue here

16

(4:25CV604)

contained multiple conflicting data points concerning the vehicle's owner, including information that the car belonged to Plaintiff.  The question is whether the report was reliable enough, despite that conflicting data, to establish probable cause for an arrest.  The answer: it was not.

> ### a.  The LEADS report was not sufficient for arrest or Summary Judgment.

Notably, the LEADS report at issue in this case was not produced to the Court for review. The Court ordered the parties to jointly produce the report or else show cause as to why it could not be produced.  ECF No. 30.  In the joint response, Defendants explained that the LEADS report is maintained by a third party and is considered privileged under Ohio and federal law, prohibiting disclosure in civil litigation.  ECF No. 32 at PageID ##: 825–26.  Understanding disclosure of the LEADS report in civil litigation is limited, the Court is left with Defendants' contemporaneous statements and deposition testimony—which are inconsistent at best—to determine the report's alleged contents.  When resolving a motion for summary judgment, the Court cannot engage in jury functions, such as weighing evidence and making credibility determinations.  *Youkhanna v. City of Sterling Hgts.*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255).  Rather, it must construe the evidence and all inferences thereof in the light most favorable to Plaintiff, and determine whether a reasonable jury could return a verdict in her favor.  *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).  Therefore, the Court construes the video evidence, statements, and testimony concerning the LEADS report's contents in the light most favorable to Plaintiff.

Although the *vehicle itself* "popped" as stolen, the LEADS report also revealed that the Ohio temporary tag was newly registered to Plaintiff, indicating that it and the vehicle were lawfully issued and registered to her and recorded with the Ohio Bureau of Motor Vehicles

17

(4:25CV604)

("BMV").  *See* Ryan BWC, ECF No. 18, Ex. D., [00:12:13–54]; Ryan dep. Tr., ECF No. 24-3 at PageID #: 286–87 [17:19–18:11].  Officer Ryan conceded that there was no evidence or indication that the temporary tag was illegitimate or had been tampered with.  Ryan dep. Tr., ECF No. 24-3 at PageID ##: 343–44 [74:1–75:1].  Sgt. McGarry and Officer Delia commented several times during the investigation that the situation was "odd" because the VIN should have "popped" stolen when the temporary tag was issued.  That a legitimate temporary tag was issued indicates that the VIN did not "pop" stolen when Plaintiff bought it and there is nothing in the record indicating that Auto Boutique was aware of any issues with the VIN.[7]

Also, it is not insignificant that Sgt. McGarry, upon first learning that the temporary tag was registered to Plaintiff, determined that she, not Corey Johnson, was the registered owner. McGarry BWC, ECF No. 18, Ex. C [00:01:21–47].  Only after Officer Ryan asserted that the VIN was still associated with the previous owner did Sgt. McGarry agree that Corey Johnson was the registered owner.  But according to Officer Ryan's earlier conversation with Officer Delia, the VIN was not registered to anyone.  The police identified Corey Johnson only after officers searched prior registration records through the vehicle's master file, not the VIN itself. *See* Ryan BWC, ECF No. 18, Ex. D [00:11:33–13:24].  These inconsistencies raise genuine issues of material facts.

That Corey Johnson was no longer associated with the VIN and only identified through the prior registration records, undermines the belief that a reasonable officer would believe that Corey Johnson was the vehicle's lawful owner.  Moreover, determinations regarding what the

---

[7] Although the temporary tag and the VIN popped stolen, that the temporary tag was registered to Plaintiff should have indicated to Officer Ryan that she was the rightful owner of the car.  This is particularly true considering it is still unclear when Corey Johnson reported the car stolen.

(4:25CV604)

LEADS report included and assessments of the credibility of Officer Ryan's (and other witnesses') statements as to its contents are matters for a jury to resolve.

Defendants identified no other evidence or information on which they relied to make a probable cause determination prior to either handcuffing Plaintiff or telling her she was under arrest.  Throughout the incident, Defendants speculated (without any supporting evidence or information) that Plaintiff may have forged the title, that she had a "friend" at the dealership or BMV who fraudulently issued the temporary tag, that she and Corey Johnson had some kind of domestic relationship, or that Corey Johnson sold her a stolen car.  Such speculation, without more, is insufficient to establish probable cause.  *See* Sykes, 625 F.3d at 308 (quoting *United States v. McClain*, 44 F.3d 556, 563 (6th Cir. 2005)) ("Speculation does not equate probable cause[.]").  Putting these conspiratorial musings aside, Defendants identified no evidence or information at the scene that confirmed that Corey Johnson, rather than Plaintiff, was the registered owner.  This is important.  Because, although dispatch confirmed that the stolen vehicle designation was still active, it did not confirm or clarify Corey Johnson's ownership claims, nor undermine the BMV records showing that Plaintiff was the registered owner.  Dispatch did not even confirm *when* the car had reported stolen, a fact which might have clarified the ownership question and explained how Plaintiff was able to obtain temporary tags.  Therefore, officers lacked probable cause at the time Plaintiff was placed in handcuffs, making her arrest unlawful.

#### b.  *Plaintiff was punished for invoking her right of silence.*

The probable cause analysis does not change even if Plaintiff's arrest occurred when Officer Ryan formally told her that she was being arrested.  Plaintiff invoked her Fifth Amendment right to remain silent and Defendants relied on that invocation, in part, to make a

19

(4:25CV604)

probable cause determination.  Surprisingly, Defendants make much of Plaintiff invoking her right to remain silent after Officer Ryan gave her *Miranda* warnings.  *See* ECF No. 22 at PageID #: 150; ECF No. 29 at PageID #: 772.  While Defendants dutifully yielded to Plaintiff's invocation of her right to remain silent, their argument that her observation of her constitutional right to remain silent establishes probable cause is flat out wrong and legally offensive.  *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) (collecting cases) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").  Furthermore, both the Sixth Circuit and the Supreme Court have held  that "[t]he Fifth Amendment forbids the government from punishing defendants for exercising their constitutional and statutory rights."  *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023) (concerning a defendant's challenge for prosecutorial vindictiveness); *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)) ("To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'").[8]  That it might have been more expedient for police if Plaintiff had not invoked her constitutional right to silence cannot be held against her in their probable cause determination.

Consequently, Plaintiff's silence does no work to confirm or deny the conflicting data in the LEADS report.  As indicated earlier, the record is silent about any other evidence or information available at the scene that confirmed that Corey Johnson, rather than Plaintiff, was the vehicle's lawful owner.  Plaintiff's punishment for not speaking up sooner is illegal and

---

[8] Although those cases concern a criminal defendant's exercise of the right to a jury trial, as opposed to pleading to charge crimes, the principle applies equally in this case.

(4:25CV604)

outrageously so. Rather than musing and making assumptions about the vehicle's ownership, Officer Ryan could have accepted the help Plaintiff offered when he returned to his car to announce that she was under arrest.[9] For reasons unhelpful to his case, Officer Ryan withheld[10] from Plaintiff the nature of his concern—that he thought her car was stolen. Given the dubiousness of the evidence on which Officer Ryan was relying, sharing his concerns with Plaintiff sooner would have helped a reasonable officer to discern that Plaintiff owned the vehicle and that neither detention nor arrest were justified or required. It was not until after Officer Ryan *returned* to the cruiser in which Plaintiff was seated and handcuffed, did he tell her that he believed her car was stolen. Then, he rebuffed her *immediate* offer to show him her "paperwork" proving that she owned the vehicle, notwithstanding its prior history. Had Officer Ryan accepted Plaintiff's offer, the paperwork in connection with the contradicting LEADS report would likely have exculpated her on the spot or, minimally, caused a reasonable officer to make further inquiry which would have likely led to a termination of the hastily made arrest.

Construing the evidence in the light most favorable to Plaintiff, the LEADS report contained conflicting information such that it was unreliable and, therefore, insufficient on its own to establish probable cause. And Defendants failed to identify any evidence or information aside from the LEADS report that confirmed or clarified that Corey Johnson, rather than Plaintiff, was the registered owner. Accordingly, the Court concludes that Defendants lacked probable cause to arrest Plaintiff and, therefore, violated her Fourth Amendment right to be free

---

[9] As explained above, because the initial detention was unjustified, Plaintiff was under arrest when Officer Ryan handcuffed her and then placed her in his cruiser.

[10] His secretiveness was intentional. Officer Ryan placed Plaintiff in handcuffs and merely said, "I know these [handcuffs] might be uncomfortable . . . I'll explain what's been going on." Ryan BWC, ECF No. 18, Ex. D [00:42:58–00:43:01]. That was one of several poor judgments exercised by Officer Ryan that early morning.

(4:25CV604)

of illegal search and seizure.  In the alternative, inconsistencies in the record regarding the LEAD report's contents creates genuine issues of material fact such that summary judgment in favor of Officer Ryan is inappropriate.

### 3.  Involvement in Arrest

Having concluded Plaintiff's Fourth Amendment rights were violated, the Court must make an individualized assessment as to each Defendants' liability for that violation.  *Harris*, 62 F.4th at 1033 (citing *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)) (requiring a plaintiff show that each defendant personally violated her constitutional or federally secured rights.).

It is undisputed that Officer Ryan was personally involved in Plaintiff's arrest.  He was the officer responsible for handcuffing her, putting her in the police cruiser, and *eventually* telling her the reason for her arrest—receiving stolen property.  Accordingly, Officer Ryan is subject to liability under § 1983 for violating Plaintiff's Fourth Amendment rights.  In contrast, there are two inquiries concerning Sgt. McGarry's liability exposure: (1) whether he personally directed or participated in the arrest such that he may be liable for the constitutional violation; and (2) whether he had a duty to intervene and prevent Plaintiff's arrest.  The answer to both inquiries is no.

Liability under § 1983 requires that the state actor be personally involved in the alleged violation.  *Frenchko v. Monroe*, 160 F.4th 784, 800 (6th Cir. 2025) (citing *Pineda v. Hamilton Cty.*, 977 F.3d 483, 491 (6th Cir. 2020)).  Courts have denied qualified immunity to officials in supervisory positions, but liability "must be based on more than the right to control employees." *Sexton v. Cernuto*, 18 F.4th 177, 185 (6th Cir. 2021) (quoting *Griffith v. Franklin Cty.*, 975 F.3d 554, 579 (6th Cir. 2020)).  "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. (citing *Doe v.*

22

(4:25CV604)

*Clairborne Cty.*, 103 F.3d 495, 511 (6th Cir. 1996)) (internal quotations omitted).  Mere presence at the scene or acting as backup is insufficient to establish liability.  *Alexander v. Carter for Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018) (citing *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013)).  An officer who does not physically restrain an individual nor participate in the decision to make an arrest is not subject to liability under § 1983.  *See Alexander*, 733 F. App'x at 267–68 (finding that a sheriff's deputy's participation in discussions about charging a suspect already under arrest could not be said to have personally directed or participated in the arrest itself.).  Conversely, a non-arresting officer who nevertheless participates in the decision to arrest a suspect is "personally" involved in the arrest.  *Harris*, 62 F.4th at 1036.  In such cases, "the inquiry still turns on probable cause for the arrest itself."  *Id*.

In this case, Plaintiff claims that Sgt. McGarry directed Officer Ryan to arrest Plaintiff, pointing to deposition testimony in which Sgt. McGarry asserted that he made the probable cause determination.  ECF No. 24 at PageID #: 183; McGarry dep. Tr., ECF No. 24-4 at PageID #: 534 [55:9–16].  Plaintiff's timeline is off.  As explained above, Plaintiff was arrested the moment Officer Ryan handcuffed her.[11]  In this case, post-arrest conversations that Sgt. McGarry had with the other officers are not relevant to determining his involvement with the decision to arrest Plaintiff.  *See Alexander*, 733 F. App'x at 267–68 (finding that participation in post-arrest charging discussions does not demonstrate that a police officer was personally involved in the arrest).  The record does not support a conclusion that Sgt. McGarry instructed Officer Ryan to arrest Plaintiff if she approached them.  To the contrary, he seemed surprised by Officer Ryan's

---

[11] *See also United States v. Shaw*, 464 F.3d 615, 622 (6th Cir. 2006) (citation omitted) (reminding that the Sixth Circuit has held that when a suspect is placed in the back of a police car, the suspect is considered to be under arrest).

(4:25CV604)

actions.  McGarry BWC, ECF No. 18, Ex. C [00:02:55–00:03:04].  Moreover, Sgt. McGarry's

probable cause determination was not reached until after Plaintiff had been placed in the police

car and Officer Ryan told Sgt. McGarry that Plaintiff had invoked her right to remain silent.

McGarry BWC, ECF No. 18, Ex. C [00:23:39–56].  Based on this record, the decision to arrest

Plaintiff was Officer Ryan's alone and that Sgt. McGarry was not personally involved in the

constitutional violation such that he is liable under § 1983.  That Sgt. McGarry sanctioned

Officer Ryan's decision after the fact is a separate matter, as briefly discussed below.

Plaintiff asserts that Sgt. McGarry had an affirmative duty to intervene and prevent

Officer Ryan from arresting her without probable cause.  ECF No. 24 at PageID #: 183.  It is

clearly established that law enforcement officers have a duty to intervene to prevent an arrest not

supported by probable cause.  *Bunkley v. City of Detroit, Mich.*, 902 F.3d 552, 566 (6th Cir.

2018).  In *Bunkley*, the plaintiff was arrested and convicted on attempted murder charges.  After

his conviction had been overturned, he brought malicious prosecution claims against the

arresting police officers.  *Id*. at 555.  Affirming the district court's denial of qualified immunity,

the Sixth Circuit concluded that the arresting officers had a duty to prevent the plaintiff's arrest

because they knew at the time of the arrest that: (a) they had not investigated the shooting at

issue; (b) the plaintiff did not match the suspects' descriptions; (c) the plaintiff had not been

questioned before his arrest; and (d) the plaintiff did not have a probation violation, the purported

reason for his arrest.  *Id*. at 566.  That analysis turned on what information the officers knew at

the time of the arrest.

The present action is distinguishable from *Bunkley*.  It is undisputed that Defendants did

not correctly identify the vehicle's lawful owner because the LEADS report had conflicting

information, which required further investigation.  Notably, however, Officer Ryan provided Sgt.

24

(4:25CV604)

McGarry with inaccurate information throughout the investigation.  Even though Officer Ryan's information was faulty, it is not unreasonable that it was accepted by his superior, Sgt. McGarry. First, in response to Sgt. McGarry's conclusion that Plaintiff was the lawful owner, Officer Ryan told Sgt. McGarry that the VIN was registered to Corey Johnson.  McGarry BWC, ECF No. 18, Ex. C [00:01:21–49].  That was not true.  It was not.[12]  Second, Officer Ryan told Sgt. McGarry that Plaintiff claimed the vehicle was hers.  McGarry BWC, ECF No. 18, Ex. C [00:23:39–53]. That was not true.  She made no such claim.[13]  While we leave for another day the question of whether Officer Ryan's misstatements were intentional, the fact remains that Sgt. McGarry was relying on inaccurate information reported to him by another police officer (Officer Ryan) when Sgt. McGarry made his probable cause assessment.  *See Humphrey*, 482 F.3d at 847 (stating "whe[n] individual police officers, acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing they are in compliance with the law, qualified immunity is warranted[.]").  Given the information available to him at the time, Sgt. McGarry reasonably believed that Officer Ryan had probable cause to arrest Plaintiff and, therefore, he had no duty to intervene.  Because the Court concludes that Sgt. McGarry did not violate Plaintiff's constitutional rights, it need not address the "clearly established right" prong. *Mosier*, 90 F.4th at 546.

---

[12] Officer Ryan told Officer Delia that the VIN was not associated with anyone, and that Corey Johnson's name was found by searching the vehicle's master file.  *See* Ryan BWC, ECF No. 18, Ex. D [00:11:33–13:24].  In the alternative, there is a genuine issue of material fact as to what the LEADS report included.  Thus, a question for the jury to resolve.

[13] She inquired, "I was just seeing why you were, uh, towing this car?"  Police Report, ECF No. 24-2 at PageID #: 267; Ryan BWC, ECF No. 18, Ex. D [00:42:30–42:32].

25

(4:25CV604)

For these reasons, Defendants' motion for summary judgment on Count 3, as to Sgt. McGarry, is granted.

### 4. Clearly Established Right

Having concluded that Officer Ryan violated Plaintiff's constitutional right, the Court must determine whether that right was clearly established at the time of the violation.  It is clearly established that an arrest without probable cause violates the Fourth Amendment.  *Ouza, 969 F.3d at 279* (internal citations omitted).  While a plaintiff seeking to defeat qualified immunity need not point to a case directly on point, the existing precedent must have placed the constitutional issue beyond question.  *al-Kidd*, 563 U.S. at 742.  Courts cannot define a constitutional right with a "high level of generality" when assessing qualified immunity defenses.  *Wesby*, 583 U.S. at 63–64 (citing *Plumhoff v. Rickard*, 572 U.S. 756, 779 (2014)).  The Sixth Circuit also recognizes that "just as a court can generalize too much, it can generalize too little.  If it defeats the qualified-immunity analysis to define the right too broadly . . . it defeats the purpose of § 1983 to define the right to narrowly."  *Ouza*, 969 F.3d at 280 (quoting *Hagans v. Franklin Cty. Sheriff's Off.*, 695 F.3d 505, 508–09 (6th Cir. 2012)).  "In the context of a warrantless arrest, the rule must obviously resolve 'whether the circumstances with which the particular officer was confronted . . . constituted probable cause."  *Wesby*, 583 U.S. at 64 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (cleaned up).

Relying on *Wesby*, Defendants argue that they are entitled to qualified immunity if they "reasonably but mistakenly" believed that they have probable cause for an arrest.  ECF No. 22 at PageID ##: 151–52.  Plaintiff retorts that *Wesby* is not controlling if Defendants ignored exculpatory evidence available to them at the time they made the probable cause determination.  ECF No. 24 at PageID #: 181.  Plaintiff has the better argument.

26

(4:25CV604)

In *Wesby*, the Supreme Court held that, based on the "totality of the circumstances," the officers had probable cause to arrest the plaintiffs for trespassing.  *Wesby*, 583 U.S. at 64–65. The Court explained that the officers observations of a loud party in a house that neighbors identified as vacant, the partygoers attempts to hide when law enforcement appeared, and the plaintiffs' vague and inconsistent explanations regarding permission to be on the premises were, taken together, sufficient to establish probable cause.  *Id*. at 65.  In the alternative, the Court concluded that the officers were still entitled to qualified immunity because they "reasonably but mistakenly" concluded they had probable cause based on the totality of the circumstances, and that no clearly established case law presenting similar circumstances undermined that conclusion.  *Id*.

*Wesby* does not help Defendants.  First, as discussed above, the LEADS report may have supported reasonable suspicion enough to justify an investigative stop, but it was insufficient on its own to establish probable cause.  Second, neither *Wesby* nor any of the cases cited by Defendants establish that police officers may reasonably rely on a LEADS report that contradicts itself and is, on its face, unreliable.  To the contrary, in *Hart v. Hillsdale County, Mich.*, the Sixth Circuit held:

> It is settled law in this circuit that an officer may not arrest and prosecute based solely on an unreliable source.  Thus, for example, "uncorroborated allegations" by an eyewitness do not establish probable cause unless the allegations are "reasonably trustworthy." *Wesley*, 779 F.3d at 429 (quoting *Logsdon v. Hains*, 492 F.3d 334 342 (6th Cir. 2007)).  "Put another way, the presumption of veracity applies only where the witness is 'someone with respect to whom there is *no* apparent reason to question the person's reliability.'" *Id. at 430* (quoting *Logsdon*, 492 F.3d at 343).  In this, an eyewitness and a database are no different.  If the officers had reason to question the database's reliability or if a reasonably well-trained officer would have caught its error immediately, then it was clearly established that the officers could not rely exclusively on that database to establish probable cause.

(4:25CV604)

973 F.3d 627, 641–42 (6th Cir. 2020).

Defendants argue that *Hart* is too factually dissimilar to the present action to satisfy Plaintiff's burden to identify clear case law putting Officer Ryan on notice that his actions under the circumstances violated Plaintiff's constitutional rights.  The Court disagrees.  *Hart* questioned whether, at the motion to dismiss stage, the evidence could show that police officers reasonably relied on a sex offender registration database report or whether the officers made intentional misstatements in probable cause affidavits supporting arrest warrants.  *See id*. at 641. The general reasoning that an unreliable database report, like an unreliable eyewitness, cannot establish probable cause without other corroborating evidence holds firm.  *See Ouza*, 969 F.3d at 283 (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)) ("As the Supreme Court noted in [*Hope v. Pelzer*, 536 U.S. 730, 742–44 (2002)], an action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.").

At least one other district court in this circuit recognized as much when it relied on *Hart* in denying qualified immunity to officers who arrested the plaintiff for being a felon in possession of a firearm based on an erroneous database entry.  *Polk v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, No. 3:24-cv-967, 2026 WL 2087367, at *3 (M.D. Tenn. July 20, 2026).  In that case, the court concluded that the only evidence that the plaintiff was a convicted felon was the database error and that "the evidence shows [that] the database was not reliable." *Id*.

That is what occurred here.  Defendants admit that the LEADS report contained conflicting information regarding the lawful owner of the car.  Those contradictions rendered the report unreliable such that, without other corroborating evidence, it could not establish probable

28

(4:25CV604)

cause.  Because he did not have corroborating evidence that Plaintiff was not the vehicle's

registered owner, Officer Ryan violated Plaintiff's clearly established right.  Accordingly,

Defendants' motion for summary judgment on Count 3 as to Officer Ryan is denied.

### C.  Count 4: Malicious Prosecution

A malicious prosecution claim is recognized as a separate constitutional violation,

distinct from that of false arrest claims, under the Fourth Amendment.  *Sykes*, 625 F.3d at 308

(citing *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)).  False arrest claims seek to

remedy detention resulting from the absence of legal process.  Malicious prosecution claims seek

to remedy detention resulting from wrongful institution of legal process.  *Id*. (citing *Wallace v.

Kato*, 549 U.S. 384, 390 (2007)).  Despite its nomenclature, the Sixth Circuit does not require a

plaintiff demonstrate "malice" to prevail on a malicious prosecution claim.  *Id*. at 309 (collecting

cases).  To succeed on a malicious prosecution claim, a plaintiff must demonstrate that: (1) a

criminal prosecution was initiated against the plaintiff and that the defendant(s) "made,

influenced, or participated in the decision to prosecute"; (2) the state lacked probable cause for

the prosecution; (3) the plaintiff suffered a deprivation of liberty because of the legal proceeding;

and (4) the criminal proceeding resolved in the plaintiff's favor.  *Alford*, 165 F.4th at 499–500

(citing *Clark v. Abdallah*, 131 F.4th 432, 453 (6th Cir. 2025)).

It is undisputed that Plaintiff was deprived of her liberty when she was arrested, spent the

night in Trumbull County Jail, and was required to provide a bond the next day to secure her pre-

trial release.  ECF No. 1 at PageID #: 6, ¶ 50; *see Wright v. City of Euclid, Ohio*, 962 F.3d 852,

876–77 (6th Cir. 2020) (recognizing that although the initial arrest is not a sufficient liberty

deprivation to support a malicious prosecution claim, confinement in jail, requiring a bond, or

mandatory bond conditions satisfy the third malicious-prosecution element).  It is also

(4:25CV604)

undisputed that the prosecutor "dropped" the charges against her on April 6, 2023, for lack of probable cause. ECF No. 1 at PageID #: 5, ₧ 33. Therefore, the criminal proceedings resolved in her favor.

At issue is whether Defendants "made, influence, or participated in the decision to prosecute" and whether they had probable cause to do so. Defendants insist that, because they had probable cause to arrest Plaintiff, her malicious prosecution claim fails. ECF No. 22 at PageID #: 148. Although it is correct that probable cause for an arrest defeats a malicious prosecution claim*, see Bringman v. Vill. of Fredericktown, Ohio*, No. 2:15-cv-628, 2016 WL 5957611, at *4 (S.D. Ohio Oct. 13, 2026) *aff'd by* No. 16-4295, 2017 WL 5564675 (6th Cir. June 29, 2017), Defendants' argument fails because, as discussed, they did not have probable cause to arrest Plaintiff.

Conversely, Plaintiff argues that because Defendants lacked probable cause to arrest her, she necessarily satisfies the probable cause element for malicious prosecution. ECF No. 24 at PageID #: 184. That is not correct either because while the probable cause inquiries for false arrest and malicious prosecution overlap, they are not identical. *See Alford*, 165 F.4th at 500 (citing *Sykes*, 625 F.3d at 310–11) ("[F]alse-arrest and malicious-prosecution claims require courts to analyze whether probable cause existed at two distinct points in time—the time that the defendant arrested the plaintiff versus the time that the defendant participated in the prosecution."). In any event, the Court need not address the probable cause element for Count 4 because Plaintiff's malicious prosecution claim falters on the first element, that is, whether Officer Ryan and Sgt. McGarry "made, influenced, or participated in the decision to prosecute."

Most cases resolving malicious prosecution claims involve at least some criminal proceedings that were initiated, such as an indictment, preliminary hearings, or trial. *See, e.g.*,

(4:25CV604)

*Webb v. United States*, 789 F.3d 647, 663 (6th Cir. 2015) (assessing individual officer's testimony before a grand jury to determine their "participation" in the prosecution decision); *Miller v. Davis*, 653 F. App'x 448, 455–56 (6th Cir. 2016) (rejecting malicious prosecution claims based on allegedly false testimony provided by an investigator during trial).  This case is unique in that the prosecutor did not actually initiate criminal proceedings against Plaintiff.  *See* ECF No. 1 at PageID #: 5, ⁋ 33.  Police officers may be liable for malicious prosecution if they provide reports, affidavits, or other investigative materials containing false or misleading information that the prosecutor then relies on to bring and prosecute charges against an individual.  *Tlapanco*, 969 F.3d at 655 (citing *Meeks v. City of Detroit*, 727 F. App'x 171, 178 (6th Cir. 2018)); *Sykes*, 625 F.3d at 311–12.  Because the prosecutor in this case did not rely on Officer Ryan's report and independently decided not to pursue any charges, Plaintiff cannot meet the first element of the malicious prosecution claim.

Even if Officer Ryan's report could satisfy the participation element, Plaintiff must still show that he included, and Sgt. McGarry approved, falsehoods or misstatements that were: (a) "material and necessary" to the prosecution; and (b) made "knowingly and deliberately, or with a reckless disregard for the truth."  *Jones v. Naert*, 121 F.4th 558, 569 (6th Cir. 2025) (citing *Sykes*, 625 F.3d at 305, 312).  Plaintiff has made no such showing.  Although the LEADS report was insufficient to establish probable cause for her arrest, Plaintiff has not shown that the police report or any other information submitted to the prosecutor contained any false or misleading information.  Interestingly, the police report accurately described the conflicting information contained in LEADS and explained the steps Officer Ryan took to arrest Plaintiff and impound

31

(4:25CV604)

the car.[14]  Police Report, ECF No. 24-2.  Plaintiff has not identified any falsehoods or misleading information contained in the police report, let alone demonstrated that Officer Ryan or Sgt. McGarry made those statements "knowingly and deliberately, or with reckless disregard for the truth."  See *Jones*, 121 F.4th at 569.

For these reasons, Defendants' motion for summary judgment on Count 4, as to both Officer Ryan and Sgt. McGarry, is granted.

### D.  Count 5: *Monell* Liability

Finally, Plaintiff alleges a *Monell* claim (Count 5) against Liberty Township for failure to train Defendants regarding probable cause determinations.  ECF No. 1 at PageID #: 7, ¶¶ 57–61.  To succeed on her *Monell* claim, Plaintiff must demonstrate that Defendants' unconstitutional conduct resulted from an official municipal policy or custom.  *Romero v. City of Lansing, Mich.*, 159 F.4th 1002, 1015 (6th Cir. 2025) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)).  Defendants argue Liberty Township is entitled to summary judgment because Plaintiff cannot show the underlying constitutional violation occurred.  ECF No. 22 at PageID #: 153 (citing *City of Los Angeles*, 475 U.S. 796, 799 (1986)).  For the reasons already discussed, that argument fails as to Officer Ryan.  *See supra*, Section III.B.

A municipality cannot be liable under a theory of *respondeat superior*; it can only be held liable for "its own wrongdoing."  *Morgan v. Fairfield Cty. Ohio*, 903 F.3d 553, 565 (6th Cir. 2018).  A municipality may be held liable under one of four recognized theories: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final

---

[14] Notably, the police report accurately records Plaintiff's inquiry (*i.e.* "towing this car") to Officer Ryan before she was placed in handcuffs.  ECF No. 24-2 at PageID #: 267.

32

(4:25CV604)

decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Romero, 159 F.4th at 1015* (citing *Burgess, 735 F.3d at 478*).

In this case, Plaintiff claims that Liberty Township failed to properly train Officer Ryan or Sgt. McGarry regarding probable cause determinations. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza, 969 F.3d at 286–87* (citing *Ellis v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006)*).  Liability for failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris, 489 U.S. 378, 389 (1989)*; *Harris, 62 F.4th at 1038* (same).  Municipality liability will not attach merely because of an officer's shortcomings that may have resulted from factors other than inadequate training, nor by a showing that the injury could have been avoided if the officer had been better trained or equipped to avoid the injury.  *City of Canton, 489 U.S. at 390–91*.

Inadequate training may amount to deliberate indifference if a municipality: (1) fails to act in response to repeated complaints of constitutional violations such that it was clearly on notice that its training in this particular area was deficient and likely to cause injury, *see Ouza, 969 F.3d at 287* (citing *Cherrington v. Skeeter, 344 F.3d 631, 646 (6th Cir. 2003)*); or (2) failed to train officers when the need for training "was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *See id.* (quoting *City of Canton, 489 U.S. at 390*).  The first avenue is the ordinary course of pursuing a *Monell* claim, while the second

33

(4:25CV604)

avenue is a narrow exception seldom adopted by courts.  *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) ("[T]he Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference.").

Plaintiff does not attempt to establish a pattern of unconstitutional conduct resulting from Liberty Township's policies or training regarding probable cause determinations for warrantless arrests.  Indeed, she cannot do so based on the record before the Court, which only cites to a single internal affairs investigation related to Sgt. McGarry's supervisory performance on an unrelated domestic violence issue involving a firearm.  ECF No. 24 at PageID #: 186.  Sgt. McGarry's internal affairs record is not sufficiently related to the issue in this case.  *See Connick*, 563 U.S. at 62–63 (finding, "Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation."); *see also City of Canton*, 489 U.S. at 391 (stating that "for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury.").  This case involves a probable cause determination in the face of an unreliable database report, not about supervisory issues concerning domestic violence incidents.

Rather than establishing a pattern of false arrests like the one in this case, Plaintiff attempts to argue the "single incident" liability applies.  In *City of Canton*, the Supreme Court explained a single violation may impose *Monell* liability if

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.

489 U.S. at 390.  By way of example, the Court noted that the need to train officers on using deadly force against fleeing suspects was "so obvious" that failure to do so could constitute

(4:25CV604)

deliberate indifference.  *Id.* at 390 n.10.  In *Board of County Commissioners of Bryan County, Okl. v. Brown*, the Supreme Court clarified that "single incident" liability depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights."  520 U.S. 397, 409 (1997).

Pointing to Liberty Township Police Chief Raymond Buhala's deposition testimony, Plaintiff argues that "Liberty Township's policy and training is that possession of alleged stolen property is enough to arrest even without knowledge meeting the knowledge element."  ECF No. 24 at PageID #: 185; Buhala dep. Tr., ECF No. 24-5 at PageID ##: 580–81 [27:8–28:25].  She contends that this training is inconsistent with *Gardenhire*—which, according to Plaintiff, requires probable cause for the *mens rea* element of a crime—is objectively unreasonable.  ECF No. 24 at PageID #: 185.  That argument is not well taken.  As discussed above, Sixth Circuit precedent supports Defendants' contention that a LEADS hit and possession can establish probable cause to arrest someone for receiving stolen property (the crime with which Plaintiff was charged), even without probable cause as to the *mens rea* element of the charged crime, if the database information is reliable.  *See supra*, Section III.B.2.  Plaintiff has not established that the circumstances in this case raise a potential for constitutional violation that is "so obvious" that Liberty Township's failure to provide training or policies explicitly addressing such circumstances constitutes deliberate indifference.  At most, the violation at issue here resulted from Officer Ryan's conduct independent of the municipality's policies.  Accordingly, Defendants' Motion for Summary Judgment on Count 5 is granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part as follows:

35

(4:25CV604)

- Plaintiff abandoned Count 1 (False Arrest and Unlawful Detention under Ohio Law) and Count 2 (Malicious Prosecution under Ohio Law).  Accordingly, those claims are dismissed.

- Summary judgment on Count 3 (False Arrest and Unlawful Detention under 42 U.S.C. § 1983) is granted as to Sergeant Chad McGarry and denied as to Officer Nick Ryan.

- Summary judgment on Count 4 (Malicious Prosecution under 42 U.S.C. § 1983) is granted.

- Summary judgment on Count 5 (*Monell* liability) is granted.

A Trial Order shall issue separately as to the remaining claim against Officer Ryan.


IT IS SO ORDERED.


August 6, 2026                                                                  */s/ Benita Y. Pearson*
Date                                                                    Benita Y. Pearson
                                                                        United States District Judge